**BROWN, d. b. a. THRIFTWAY SUPERMARKET, Plaintiff, v. AMALGAMATED MEAT CUTTERS AND BUTCHERS WORKMEN OF NORTH AMERICA LOCAL NO. 7 (AFL-CIO) et, Defendants.**

Common Pleas Court, Clermont County.

No. 26649. Decided August 27, 1956.

(KIRK, J., of Clinton County, sitting by designation in Clermont County.)

## OPINION

By KIRK, J. (sitting by assignment).

Plaintiff, Harry Brown, doing business as Thriftway Supermarket, in this action against the defendants Amalgamated Meat Cutters and Butchers Workmen of North America, Local No. 7 (AFL-CIO), an unincorporated labor association, Retail Clerks District Council No. 9, an unincorporated labor association, Retail Clerks International Association, Local Union No. 1109 and certain individual defendants, both individually and as officers of the defendant unions, seeks an injunction against defendants' picketing of plaintiff's place of business, a retail grocery store in Loveland, Ohio.

The defendants meat cutters' union and its officers have made no defense and as to them the allegations of the petition are confessed to be true.

The defendants clerks' unions and their officers have filed an answer denying the material allegations of plaintiff's petition.

The cause came on for hearing on a motion for a temporary restraining order against the picketing which was granted July 21, 1956.

By stipulation, the evidence received at the hearing on the motion for a temporary restraining order has been tendered on transcript for the disposition of the cause on the merits. Briefs have been filed by both sides.

From the evidence, the court finds the following facts:

On June 29, 1956, twelve of the thirteen clerks employed by plaintiff who would be eligible for membership in the clerks' union, signed applications for membership in that union. The application cards authorized the union "to represent me for the purpose of collective bargaining and handling of grievances, either directly or through such local union as it may duly designate."

On the same day and some six or seven hours later, a representative of the union, the defendant, Questa, entered the store of plaintiff and sought to engage him in conversation as a representative of his clerk employees. Plaintiff refused to discuss the matter and Questa immediately left the premises followed by all twelve of the employees who had signed the application cards and by some of the other employees. A picket line was immediately formed outside the store with banners bearing the name of defendant clerks' union and announcing a strike. Within a few minutes one of the employees who had signed an application for membership in the clerks' union returned to work. The next day five more of the twelve clerks returned to work. On July 10, six more of the clerks returned to work. The remaining two clerks continued to picket plaintiff's place of business, carrying the banners referred to until

the temporary restraining order was issued. The picketing has been under the supervision of the union which has maintained a supervisor on the picket line.

Some time prior to the walkout some of the employees had requested higher wages and plaintiff had promised to increase them as soon as he was able to do so. After the walkout, plaintiff discontinued Sunday operations about which there had been, apparently, some complaint on the part of some of the employees and did increase wages of some but not all of the employees who returned to work.

On July 6th, representatives of plaintiff met with representatives of the three unions. In reply to an inquiry as to what would be required to end the strike, the union representatives told plaintiff's representatives that it would be necessary to sign the unions' standard contracts by the terms of which plaintiff would recognize the unions as the sole bargaining representatives of all of plaintiff's employees and which would require that all of plaintiff's employees join and maintain membership in the unions as a condition of their employment.

Later on the same day there was presented to plaintiff's manager, a petition signed by numerous employees, among them the six employees who had signed applications for membership in the clerks' union but who had by this time returned to work, in the following language:

"July 6, 1956

"Mr. Brown, we do not like the tactics the Union has been using at our store in picketing and causing all of this trouble. No matter what any of us may have signed in the past, we want you to know that we do not approve of these tactics.

"We do not want to join or belong to this Union and do not want it to speak for us or represent us in anyway. We have no grievances or disputes with you or anyone over wages, hours or working conditions and want the Union to leave us alone.

"We have signed this of our own free will without any threats or promises of any kind from the company."

On July 10th a similar petition was signed and presented to plaintiff by other employees including the four of those who had signed applications for membership in the clerks' union but who had returned to work on this day.

Thus all of the retail clerks except the two who remained on the picket line had by July 10th rescinded the authority which they had given to the union to represent them and had plainly and strongly expressed their unwillingness to belong to the union or to have it represent them.

In connection with membership in the union, it is interesting to note that none of plaintiff's employees has ever been accepted into membership in the union. The acceptance portions of the application cards remain blank, even in the case of the two employees who had not returned to work and who were picketing on July 21st. In fact, the defendant Questa, an organizer for the union, testified that it was the union's practice not to accept initiation fees or dues until the union has a signed contract with the employer. However, the court does not consider this fact as controlling since the union here has the authority

to represent the two employees who have not returned to work. But the court's decision is not based on the fact that none of plaintiff's employees is actually a member of the union.

The court concludes that there is no dispute or disagreement between the plaintiff and his non-striking employees at this time. As to the two employees who have not returned to work and who testified at the hearing, the court is driven to the conclusion that their only "grievance" is the fact that plaintiff has refused to sign a union agreement with the defendant clerks' union by which all of their fellow clerks would be required against their wills to be members of the union in order to keep their jobs. These two were active in procuring applications for membership in the union and one of them had been previously affiliated with the union. In other words, the court finds as a fact that the sole object of the picketing on the part of the defendant union is to organize plaintiff's store contrary to the expressed wishes of about 85 per cent of his employees who would be eligible for membership in the union.

Quaere: Should picketing by these two employees or others under the auspices of the union under these circumstances be enjoined?

Picketing is a powerful weapon. Many members of the public at large refuse to patronize a place of business which is being picketed. In the instant case, although the picketing has been entirely peaceable, plaintiff's manager testified that business had fallen almost 30 per cent. In addition because of the policy of delivery drivers to refuse to cross picket lines, the plaintiff has been put to additional trouble and expense in obtaining delivery of merchandise to his store.

Recognizing the rights of employees to peacefully picket for lawful purposes, it is the policy of the law not to interfere with such picketing. But the converse of this proposition is equally true. Where the picketing is for an unlawful purpose or for a purpose which is against public policy, it will be enjoined. **Anderson Sons Co. v. Union, 156 Oh St 541.**

The court feels that it is obviously against public policy to permit to be forced upon the great majority of an employer's employees membership in and representation by a union against the expressed desires of such employees and that picketing against an employer by or under the auspices of a union for that purpose is wrongful and should be enjoined.

Therefore, under the principle of **Crosby v. Rath, 136 Oh St 352,** and under the authority of Anderson v. Union, 38 LRRN 2324, **Fairlawn Meats, Inc. v. Union, 99 Oh Ap 517, Johnson Bros. v. Union, 51 O. O. 122** and **Bean v. Union, 51 O. O. 152,** the temporary injunction heretofore granted in this cause will be made permanent.

The plaintiff will recover his costs.

Counsel for plaintiff will prepare an appropriate entry and submit the same to counsel for the answering defendants and then to the court.