**PANCAKES, INC., an Ohio Corporation, Plaintiff, v. CINCINNATI JOINT EXECUTIVE BOARD, an unincorporated labor association, affiliated with the Hotel & Restaurant Employees and Bartenders International Union (AFL-CIO) et, Defendants.**

Common Pleas Court, Hamilton County.

No. A-169479.   Decided May 6, 1959.

Brown & Gettler, Ben Gettler and Jonas B. Katz, of counsel, for defendants.

J. Mack Swigert, Charles D. Lindberg, for plaintiff.

## OPINION

By RENNER, J.:

The plaintiff, Pancakes, Inc., is an Ohio Corporation which owns and operates a restaurant under the trade name of Peri's Pancakes at Fifth and Main Streets, Cincinnati, Ohio, and sells pancakes and other food products to the Cincinnati public.

Plaintiff seeks a permanent injunction against the defendants, Cincinnati Joint Executive Board, an unincorporated labor association affiliated with the Hotel & Restaurant Employees and Bartenders International Union (AFL-CIO) and five unincorporated labor associations affiliated with the Cincinnati Joint Executive Board and numerous persons who are sued in their individual capacity and also as officers or agents or members of the defendant Cincinnati Joint Executive Board or one or more of the unincorporated labor associations named as defendants.

The prayer of the petition asks for an order enjoining the defendants and each of them, their officers, agents, members and employees, and all other persons acting in concert or conspiracy with them from:

(1) picketing or bannering in any way plaintiff's said restaurant at Fifth and Main Streets, Cincinnati, Ohio, or authorizing, directing, aiding, abetting or otherwise encouraging or participating in said picketing and bannering;

(2) seeking to compel plaintiff to employ only members of defendants' Unions, or seeking to compel plaintiff to coerce its employees to become dues-paying members of one or more of said defendant Unions, or to join or maintain membership therein as a condition of employment;

(3) attempting in any way to compel persons who either seek or do business with, or are doing business with the plaintiff to cease doing such business, and attempting to compel them or any of them to refuse to enter on the premises of the plaintiff;

(4) threatening, intimidating, interfering with or coercing plaintiff or its employees by threats of trouble, physical violence, or other discriminatory practices;

(5) all other acts or measures seeking or attempting to carry out any of the foregoing.

The defendants filed an answer and a cross-petition in which cross-petition the defendants also pray for an order permanently enjoining the plaintiff and its officers, agents, employees, and all other persons acting in concert or conspiracy with them from:

(1) Bannering or publicizing in any way advising the public that its employees are not on strike, and

(2) From refusing to reinstate defendants James Arrighi, Peter Arrighi and James Brooks with back pay from the date of their discharge.

Plaintiff's petition alleges that the defendants and each of them have entered into a conspiracy to force the plaintiff to enter into a collective bargaining agreement covering all of its employees and to require all of the employees regardless of their wishes to become dues-paying mem-

bers of the defendant unions and to maintain such membership as a condition of employment, and requiring any new employees regardless of their own wishes to become dues-paying members of the defendant unions within fifteen days of their employment and thereafter to maintain such membership as a condition of employment.

The petition also alleges that in furtherance of the conspiracy, the defendants and others, acting in concert with them, have through threats of violence driven from plaintiff's premises many persons who sought to carry on business with the plaintiff.

The petition further alleges that the plaintiff has no labor dispute with its cooks, dishwashers, waitresses, bus boys and employees in similar classifications.

Counsel for plaintiff contend that the picketing and bannering is for the sole purpose of bringing pressure upon the plaintiff to coerce his employees to join a union, that no labor dispute exists between plaintiff and the defendant employees of plaintiff and that the Court should therefore grant the injunctive relief prayed for.

In support of this contention counsel for plaintiff rely upon the following cases in which injunctions were granted by the Courts of Ohio:

Crosby v. Rath, 136 Oh St 352, 16 O. O. 496. In this case there was no labor dispute. None of the employees were members of a union and they did not desire membership. The facts further disclose that dynamite bombs and stench bombs had been used and that a delivery truck was burned and there were other acts of violence.

Faxon Hills Construction Company v. United Brotherhood of Carpenters and Joiners of America, Court of Appeals for Hamilton County, No. 8224. In this case there was no labor dispute and none of the employees of the plaintiff were on the picket line.

Chucales v. Royalty, 164 Oh St 214, 57 O. O. 431. In this case the facts were similar to the aforementioned cases. There was no labor dispute. None of the employees wished to join the union and none were on the picket line. The Court at page 222 (Oh St) made this observation:

"There is nothing in the record to show what interests of defendants will be advanced by this picketing other than their interest in getting additional members for their union. For example, there is not even any evidence that, because of such things as payment of low wages or long hours of employment, plaintiffs are enjoying a competitive advantage over others, who are engaged in the same business and are maintaining union standards and employing those whom defendants represent. Under such circumstances, Ohio is certainly reasonable in determining that it is against its public policy to permit the use of its streets and sidewalks to stir up industrial strife that does not exist and for the existence of which there is no apparent reason."

Fairlawn Meats, Inc., v. Amalgamated Meat Cutters etc., 99 Oh Ap 517, appeal dismissed, 164 Oh St 285. In this case, at page 524 (Oh Ap), the Court concluded its opinion with the following statement:

"It is the judgment of this court that, since the picketing herein was for organizational purposes only, and not to secure a settlement of

grievances among the employees, and since the picketing in part was done on land owned by or under lease to Fairlawn Meats, and since the union by threats and coercion instituted a secondary boycott against Fairlawn Meats, the picketing, although not accompanied by violence, was nevertheless unlawful under the announced policy in Ohio."

Anderson, et al., v. Local Union No. 698, 101 Oh Ap 542, 1 O. O. 2d 451, appeal dismissed, 165 Oh St 512. At page 453 (O. O.), the Court stated:

"A situation, similar to that in the Fairlawn Meats case, supra, and in the Bean case, supra, exists here. No dispute with the employees existed after the expiration of the contract, for even the three union members continued to work; and they testified they had no dispute with their employer. The market became a non-union establishment by the statement of the employer, and the majority of the employees desired that no union represent them in their dealings with the employer. The purpose of the picket line was to coerce the employees into rejoining the union and to force the employer, against his will, to accept the union as the bargaining agent of the employees.

"In such a situation, the picketing became unlawful under the public policy of this state."

Johnson Bros. Furniture v. Retail Clerks, et al, 51 O. O. 122, Lucas County Common Pleas Court. In this case seven out of eight of the employees were not members of a union and refused to join. There is nothing in the opinion of the Court which indicates that the eighth employee who was a member of the union was on a strike against the plaintiff. The statement of the Court in its opinion indicates that he was not on a strike, and at page 124 found that "the facts in this case are parallel and identical with the facts in the case of Crosby v. Rath."

In Crosby v. Rath, supra, the Supreme Court stated at page 496 (O. O.):

"There is no dispute between the plaintiff and her employees."  ·

Harry Brown, d. b. a. Thriftway Super Market v. Amalgamated Meat Cutters, etc., 33 Labor Cases, Sec. 71,098, is a case which originated in the Clermont County Common Pleas Court, was affirmed by the Court of Appeals and an appeal to the Supreme Court was dismissed. CP 77 Abs 81, OA 77 Abs 85. In that case, 12 of the 13 clerks employed by plaintiff who were eligible for membership in the Clerks Union on June 29, 1956, signed applications for membership in the union. Some 6 or 7 hours later on the same day a union representative entered the store to engage the plaintiff in conversation as a representative of his clerk employees. Upon refusal of the plaintiff to discuss the matter, the union representative left the premises followed by all 12 of the employees who had signed the applications. A picket line immediately formed outside the store with banners. Within a few minutes one of the employees who had signed an application for membership in the union returned to work. The next day 5 more of the 12 clerks returned to work and on July 10 6 more returned to work. This would seem to account for all of those who had gone out but the Court in its opinion stated that the remaining 2 clerks continued to picket plaintiff's place of business carrying the

banners referred to until a temporary injunction was issued. Some time prior to the walk-out, some of the employees had requested higher wages which were promised as soon as plaintiff was able to do so. After the walk-out Sunday operations were discontinued about which the Court said there apparently had been some complaint on the part of some of the employees and some wage increases were granted but not to all of the employees who returned to work.

Petitions were signed by all of the retail clerks, except the 2 who remained on the picket line, by July 10th, rescinding the authority which they had given to the union to represent them and they plainly and strongly expressed their unwillingness to belong to the union or to have it represent them. The Common Pleas Court concluded that there was no dispute or disagreement between the plaintiff and his nonstriking employees; as to the 2 employees who had not returned to work the Court stated that it was driven to the conclusion that their only grievance was the fact that plaintiff had refused to sign a union agreement with the defendant clerks union by which all of their fellow clerks would have been required against their will to be members of the union. The Court further found that the sole object of the picketing on the part of the defendant union was to organize plaintiff's store contrary to the express wishes of about 85% of his employees who had been eligible for membership in the union.

**Bean v. Local Union No. 698, et al, 51 O. O. 152.** This case was decided by the Summit County Court of Appeals. In that case the Court of Appeals found that the evidence failed to disclose any labor dispute and enjoined picketing on the part of the union.

The syllabus reads as follows:

"In the absence of a dispute between employer and employees, or between the union and the employer or employes, a union may not engage in peaceful picketing for the purpose of bringing pressure to bear upon the employer to require his employees to join the union."

**Anderson Sons Co. v. Local Union 331, et al, 156 Oh St 541, 46 O. O. 460.** Syllabus 1 of that case reads as follows:

"1. Where no unlawful purpose or object is involved, workers may by means of picketing or bannering announce their grievances to the public and thus persuade or seek to persuade prospective employees as well as prospective customers of the person against whom the picketing or bannering is directed from dealing with such person."

However, in this case the Supreme Court found that the acts and conduct of the union constituted a secondary boycott and were unlawful and it sustained the judgment of the trial court which had granted an injunction to Anderson Sons Company, the appellant.

**Yakumithis v. Vending Machine Service Employees, Local Union 410-T, 51 O. O. 126.** This case was before the Court on a motion for a temporary injunction. An order was made by the Court granting a temporary injunction against all forms of picketing, peaceful or otherwise. The headnotes in that case indicate the basis upon which the Court granted the relief. They read as follows:

"1. No picketing can be lawful unless it is established first by the evidence that a legitimate trade dispute exists.

"2. In the absence of a legitimate trade dispute, picketing by a union organized for the purposes of controlling the juke box industry will be enjoined."

In all of the foregoing cases cited by plaintiff's counsel, the Courts found that no labor dispute existed between the respective employers and employees. In the instant case, plaintiff claims that the sole or major purpose of the strike and picketing is to compel the plaintiff to grant a closed shop or a union shop but the evidence in the case fails to sustain such contention.

The evidence discloses that from December 4, 1958, when the restaurant opened for business, to the date of the strike on April 1, 1959, the scale of wages paid by the employer to the employees, with few exceptions, was considerably less than the prevailing wages paid by the great majority of the restaurants within the radius of 5 or 6 squares from plaintiff's location; that the hours of employment in many instances exceeded 8 hours per day and a total of 40 hours per week and that an 8 hour day and 40 hour week was in effect in the great majority of restaurants within the area; that no compensation over the regular hourly wage was paid for overtime or holidays whereas in the great majority of restaurants in the area time and a half was paid for overtime, and that no grievance procedures were set-up for plaintiff's employees whereas in the majority of other restaurants in the area those advantages were granted to their employees. These disparities alone presented a continuing basis for legitimate grievances.

The evidence further shows that dissensions did exist between the plaintiff and some of its employees from sometime prior to January 9, 1959, when the vote was taken to ascertain whether the employees wished union representation, to the beginning of the strike and thereafter. The result of the balloting discloses that at that time there were 11 out of 29 of the employees in favor of the union.

Although Walter Schwartz, the President and General Manager of plaintiff's restaurant, informed the employees that he would abide by their wishes, his words and his course of conduct indicated that he was averse to a union shop or closed shop.

The evidence also discloses that he was aware of efforts made by Peter Arrighi, James Arrighi and James Brooks to influence other employees in favor of union representation and that he also accused Rosemary Baker of being a union sympathizer. Miss Baker was discharged on March 23rd and the two Arrighis on March 30th. Walter Schwartz testified that he discharged Miss Baker because of a petty cash discrepancy and that he discharged Peter Arrighi for failing to keep a clean kitchen and also because of the rise of 8% in food costs in the month of February. He testified that James Arrighi was discharged for not being attentive to his duties. Mr. Schwartz stated that James Brooks was discharged on a date shortly prior to March 23rd for drunkenness and absenteeism. Whether or not the reasons assigned by Mr. Schwartz were the main or sole reasons for the discharge of those 4 employees, the action taken by him added to the unrest and dissension and resulted in the walk-out and strike within two days after the two Arrighis were discharged.

Ten of the employees who are now on strike and Peter Arrighi and James Arrighi who were discharged by the manager were called as witnesses to testify on behalf of the defendants. In general, their testimony was to the effect that they struck and were picketing plaintiff's restaurant to obtain higher wages, shorter hours, job security and improved labor relations with the plaintiff.

From the foregoing facts as disclosed by all of the evidence in the case, the Court concludes that legitimate grievances and labor disputes existed between the plaintiff and the defendants during the period of time heretofore indicated and that by reason thereof the defendants were and are entitled to strike and peacefully picket the plaintiff's restaurant.

Coming now to consider the cross-petition, the defendants allege that plaintiff on April 1, 1959 at about 10.00 A. M. placed a banner in its window stating:

"The employees of Peri's Pancakes are not on strike."

The plaintiff admits that such sign was placed in the window at or about the time mentioned and there is in evidence marked Exhibit "M" a photograph of the front of the restaurant showing the sign displayed in the window. No evidence was presented to indicate that the sign has since been removed.

In **W. E. Anderson Sons Company v. Local Union 311, 156 Oh St 541, 46 O. O. 460, syllabus paragraph 1** reads as follows:

"Where no unlawful purpose or object is involved, workers may by means of picketing or bannering announce their grievances to the public and thus persuade or seek to persuade prospective employees as well as prospective customers of the person against whom the picketing or bannering is directed from dealing with such person."

And at **pages 553 and 554 (Oh St)** the Court states:

"Presently, the weight of authority seems to be that workers may lawfully by means of pickets, banners, circulars, newspaper announcements, radio broadcasts or any other appropriate method announce their grievances to the public in order to persuade prospective employees as well as prospective customers to refrain from dealing with their employers. . * * * However, the privilege of picketing or bannering is limited to peaceful persuasion and is lost when there is resort to violence, intimidation, **falsehood**, defamation, obstruction of highways, obstruction to means of access to employer's place of business or other unlawful means." (Emphasis added.)

And at page 561 the Court states:

"Court decisions now seem to firmly establish the rule that picketing or bannering as a means of the exercise of the right of free speech will be afforded constitutional protection so long as it is lawfully conducted, but if it becomes unlawful then it falls within the category of a civil wrong and must be governed by the law of torts. In other words, the constitutional guaranty of the right of free speech is predicated upon the lawful exercise of such right and if, through conspiracy or unlawful conduct, the result of its exercise unlawfully injures another in his property rights, the guaranty ceases and the exercise of the claimed right by such means may be enjoined or prohibited."

In Cafeteria Union v. Angelos, 320 U. S. 293 at page 295 the Court states:

"In Senn v. Tile Layers Union 301, U. S. 468, this Court ruled that members of a union might, 'without special statutory authorization by a state, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal constitution.' * * * To be sure, the Senn case related to the employment of 'peaceful picketing and **truthful publicity.**' 301 U. S. at page 482." (Emphasis added.)

This rule which requires truthfulness in banners used on a picket line must apply with equal force to signs or banners displayed by employers in labor disputes. The sign which plaintiff displays prominently in the window of the restaurant is a misstatement of fact and therefore must be removed by the plaintiff.

In the prayer of the defendants' cross-petition they ask that plaintiff be enjoined from refusing to reinstate the defendants James Arrighi Peter Arrighi and James Brooks with back pay from the date of their discharge.

The evidence discloses nothing other than an employer-employee relationship between the plaintiff and said three defendants which relationship, so far as the record shows, was subject to termination at the will of the plaintiff or the defendants respectively. Counsel for defendants have cited no authority and the Court is not aware of any which would empower this Court to compel the plaintiff to reinstate those defendants with back pay.

In conclusion, as to plaintiff's petition, the Court finds that:

(a) The relief asked for in the prayer of plaintiff's petition, paragraph numbered one, namely that the defendants, and each of them, their officers, agents, members and employees and all other persons acting in concert or conspiracy with them, be enjoined from picketing or bannering in any way plaintiff's restaurant at Fifth and Main Streets, Cincinnati, Ohio, or authorizing, directing, aiding, abetting or otherwise encouraging or participating in said picketing and bannering, should be denied.

(b) In paragraphs 2, 3, 4 and 5 of the prayer of plaintiff's petition the plaintiff asks the Court to enjoin the defendants and each of them, their officers, agents, members and employees and all other persons acting in concert or conspiracy with them from:

Par. "(2) seeking to compel plaintiff to employ only members of defendants' Unions, or seeking to compel plaintiff to coerce its employees to become dues-paying members of one or more of said defendant Unions, or to join or maintain membership therein as a condition of employment;

"(3) attempting in any way to compel persons who either seek to do business with, or are doing business with the plaintiff to cease doing such business, and attempting to compel them or any of them to refuse to enter on the premises of the plaintiff;

"(4) threatening, intimidating, interfering with or coercing plaintiff or its employees by threats of trouble, physical violence, or other discriminatory practices;

"(5) all other acts or measures seeking or attempting to carry out any of the foregoing."

The evidence discloses an incident which occurred since the strike commenced when tempers flared between Gerald Baker, the night manager for plaintiff, and James Arrighi, one of the defendants, and that James Arrighi threatened to strike the manager with a banner which he was carrying on the picket line.

There was other testimony as to incidents of interference on the part of some of the defendants with patrons of the plaintiff.

The evidence of these incidents is insufficient to deny the defendants the right to peacefully and lawfully picket and banner.

Cafeteria Union v. Angelos, supra, 320 U. S. 293:

Syllabus par. 3:

"The right to peaceful picketing cannot be taken away merely because in the course of the picketing there may have been isolated incidents of abuse falling short of violence."

However, in order to protect the rights of the plaintiff and those who are now working for the plaintiff, the patrons and others having business with the plaintiff, other persons who may enter plaintiff's restaurant and persons lawfully using the sidewalks or streets at or near plaintiff's restaurant, the relief sought in said paragraphs numbered two, three, four and five should be granted but only to the extent of enjoining the defendants and each of them, their officers, agents, members and employees and all other persons acting in concert or conspiracy with them from the commission of any unlawful acts but in no way to abridge the rights of the defendants and the others last mentioned to peacefully and lawfully engage in picketing, bannering or such other acts of peaceful persuasion.

However, in the lawful pursuit of their objectives the defendants and each of them, their officers, agents, members and employees and all other persons acting in concert or conspiracy with them should be restrained and enjoined from permitting more than two persons at any one time from congregating or assembling or carrying banners or distributing literature in front of or adjacent to plaintiff's restaurant or from deliberately blocking any persons from entering or leaving such place of business.

As to the defendants' cross-petition the Court finds that:

(c) The plaintiff should be enjoined from advising the public by banners or signs that its employees are not on strike as prayed for in defendants' cross-petition (Par. 1):

(d) The relief asked for in the prayer of defendants' cross-petition numbered paragraph two, namely, that the plaintiff be enjoined from refusing to reinstate the defendants James Arrighi, Peter Arrighi and James Brooks with back pay from the date of their discharge, should be denied.

The costs of this action are to be equally assessed, one-half against the plaintiff and one-half against the defendants.

Counsel will please present a judgment entry accordingly.